1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

XIAOHUA HUANG,

         Plaintiff,

  v.

NEPHOS INC.,

         Defendant.

                               /

No. C 18-06654 WHA

**ORDER GRANTING
DEFENDANT'S MOTION TO
STRIKE AND DENYING
PLAINTIFF'S MOTION FOR
SANCTIONS**

### INTRODUCTION

In this patent infringement action, accused infringer moves to strike *pro se* patent owner's infringement contentions and to dismiss the instant action with prejudice. *Pro se* patent owner moves for sanctions against accused infringer. Accused infringer's motion to strike is **GRANTED** to the extent stated below and patent owner's motion for sanctions is **DENIED**.

### STATEMENT

*Pro se* plaintiff Xiaohua Huang owns United States Patent Nos. 6,744,653 ("the '653 patent") and 6,999,331 ("the '331 patent"). The patents generally involve ternary content addressable memory ("TCAM") technology used in the semiconductor chip industry. According to the complaint, from October 2014 to November 2014, plaintiff had several meetings with the design team of "MediaTek" to discuss TCAM design. In 2016, part of MediaTek's design team became defendant Nephos Inc., which plaintiff sued for infringement of the '653 and '331 patents in November 2018 (Dkt. No. 1 ¶¶ 1, 8, 10).

On December 18, 2018, plaintiff served his preliminary infringement contentions (Dkt. Nos. 42-1 ¶ 3; 42-2). Defendant's counsel advised plaintiff that those contentions were both premature and non-compliant with the patent local rules (Dkt. No. 42-3). During the initial case management conference held on March 21, defendant's counsel raised the issue of the inadequacy of plaintiff's then-infringement contentions under Patent Local Rule 3-1, and the Court warned plaintiff of his obligation to comply with the local rules or risk dismissal of the instant action (Dkt. No. 42-4 at 9–10). Plaintiff subsequently served substantially the same contentions on April 2 (*compare* Dkt. No. 42-5 *with* Dkt. No. 42-2). After defendant's counsel advised plaintiff again that defendant believed the contentions to be insufficient under Patent Local Rule 3-1 and offered plaintiff an opportunity to amend (Dkt. No. 42-6), plaintiff again served essentially the same infringement contentions, with additional summaries for certain dependent claims (*compare* Dkt. No. 42-8 *with* Dkt. No. 42-5).[1]

Defendant now moves to strike plaintiff's latest amended infringement contentions. It further contends that given that plaintiff has already had repeated chances to comply with the patent local rules, the instant action should be dismissed with prejudice (Dkt. No. 42 at 1). For his part, plaintiff moves for sanctions under Rule 11. Plaintiff takes issue with defendant's corporate disclosure statement, which he believes contained false statements. He further asserts that defendant moved to strike his infringement contentions "in order to increase [plaintiff's] expense and delay the case" (Dkt. No. 44 at 1–2). This order follows full briefing and oral argument.

## ANALYSIS

### 1. DEFENDANT'S MOTION TO STRIKE.

Defendant contends that plaintiff's amended infringement contentions are deficient under (1) Patent Local Rule 3-1(c) for failure to provide "chart[s] identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality"; (2) Patent Local Rule 3-1(d) for failure to identify "any direct infringement and a description of

---

[1] Though plaintiff's deadline for amending his infringement contentions was April 4, plaintiff served the instant contentions at issue on April 14. Defendant, however, does not move to strike the late contentions on this basis (Dkt. No. 42 at 7 n.2).

the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement" for each asserted claim alleged to be indirectly infringed; and (3) Patent Local Rule 3-1(e) for failure to demonstrate "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality" (Dkt. No. 42 at 5). *See* Patent L.R. 3-1(c)–(e). This order agrees.

"Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the series of interrogatories that parties would likely have propounded without it." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 945–46 (N.D. Cal. 2018) (quoting *ASUS Computer Int'l v. Round Rock Research, LLC*, No. C 12-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (Judge Nathanael Cousins)). Patent Local Rule 3-1, which sets forth the requirements for disclosing asserted claims and preliminary infringement contentions, "require[s] the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1024 (N.D. Cal. 2010) (quoting *Bender v. Advanced Micro Devices, Inc.*, No. C 09-1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010) (Judge Edward Chen)). Though a plaintiff need not supply evidence of infringement, "the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Id*. at 1025; *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. C 11-06635 LHK (PSG), 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (Judge Paul Grewal).

### A.     Claim Chart Deficiencies.

As defendant points out, plaintiff's charts largely consist of plaintiff's opinions regarding (1) how a claim element relates to the specification or other claims; (2) how a claim element is or is not required to be present in a product; and (3) the accused products' allegedly claimed features generally, without a single reference to defendant's documents or website or specific analysis of the accused products tying specific features to the claim language. They do not contain the limitation-by-limitation analysis required by Patent Local Rule 3-1(c).

1   Plaintiff's amended infringement contentions are thus insufficient to put defendant on

2   reasonable notice of his infringement theories.

3       To highlight a few non-exhaustive examples of the aforementioned deficiencies,

4   plaintiff's chart for Claims 2, 7, 11, and 14 of the '653 patent simply states as follows (Dkt. No.

5   42-8 at 14–15, 17–18):

| | |
|---|---|
| 2. The CAM cell of claim 1, wherein the comparison circuit further includes a first pair of transistors configured to receive the detected bit value and provide a drive for the output transistor, and a second pair of transistors configured to receive the inverted detected bit value and provide a drive for the dummy transistor. | This claim further describe that how the dummy CAM cell which also perform the "Valid bit" function works. This cell is supporting both "Valid bit" and differential match line sensing of using a differential sense amplifier. This claim read (1) the TCAM use the differential Match line sensing, |
| 7. The CAM cell of claim 5, wherein an output of the pair of dummy transistors are OFF during sensing operation. | This claim further describe of Claim 5. This claim read (1) the TCAM use the differential Match line sensing, |
| 11. The CAM cell of claim 10, wherein the dummy transistors are approximately half the dimension of the output transistors. | This claim further describe of Claim 10 |
| 14. The sense circuit of claim 13, wherein the match line and the dummy line are pre-charged prior to being sensed by the sense circuit. | This claim is the common way to implement. |

And, plaintiff's charts for the asserted claims of the '331 patent fare no better, as illustrated by

the following examples for Claims 1 (as to the first limitation) and 6 (Dkt. No. 42-8 at 21, 24):

| | |
|---|---|
| [1.] (1) an array of TCAM cells arranged in a plurality of rows and a plurality of columns; a plurality of match lines, one match line for each row of TCAM cells and operatively coupled to a plurality of output transistors for the TCAM cells in each row; a plurality of dummy lines, one dummy line for each row of TCAM cells and operatively coupled to a plurality of dummy transistors for the TCAM cells in each row; | (1) This element of claim describe Fig.1.B in U.S. patent 6999331, which is the basic structure of CAM, Ternary CAM to use differential sense amplifier to sense MATCH(HIT) line, it also cover "Valid bit" function. which read (1) the TCAM use the differential Match line sensing, |

4

| | | |
|---|---|---|
| 1 | 6. The TCAM of claim 1, wherein the sense amplifier connected to the match line and the dummy line in each row comprises: two inverters connected to each other in a way of positive feedback; and a P type transistor serially connected to both inverters and [*sic*] | This claim gives one example how the differential sense amplifier in claim1 is implemented, which is not necessary to be designed the same way. |

As these examples illustrate, the charts merely describe the claims themselves and certain general features of the accused products (*e.g.*, "the TCAM use the differential Match line sensing"), with no serious attempt to explain how they read on anything specifically in the accused product. Plaintiff's charts thus fail to "identify[] *specifically* where and how *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality." Patent L.R. 3-1(c) (emphasis added). In other words, plaintiff fails to identify how defendant's products allegedly infringe the asserted claims "with as much specificity as possible with the information currently available to it" such that defendant may ascertain plaintiff's infringement theory. *See Creagri*, 2012 WL 5389775, at *3.

Plaintiff offers no meaningful response to the aforementioned deficiencies. Aside from largely regurgitating the information found in his amended infringement contentions, plaintiff simply counters that MediaTek disclosed, during a meeting with plaintiff in November 2014, various features regarding its TCAM design, which plaintiff summarizes as follows (Dkt. No. 47 at 4):

(1) TCAM use the differential Match line sensing ,

(2) amount of TCAM IP is more than five Megabits,

(3) search speed of the TCAM is more than 1 GHz at 28nm process,

(4) smallest TCAM unit is 1K x 160 bits with priority encoding logic,

(5) TCAM requires as low power as possible using ML (match line) small-swing

Based on this, plaintiff makes the blanket assertion that defendant's TCAM "reads on the claims of" the patents-in-suit and that "[m]ore than 5 Mbit TCAM have [*sic*] been used in each and every Nephos Inc.'s chip products" (*ibid.*).

During oral argument, plaintiff asserted that defendant unfairly portrayed the infringement contentions at issue by offering examples of dependent claims only. But those examples are just that — merely examples to highlight the overall deficiencies in the contentions with respect to *both* independent and dependent claims. Moreover, plaintiff clearly asserts the dependent claims at issue against defendant, as disclosed by his own infringement contentions (*see* Dkt. No. 42-8 at 1–2). Though plaintiff argued during oral argument that he largely relies on infringement of the independent claims, Patent Local Rule 3-1(c) nonetheless requires plaintiff to specifically identify for *each asserted claim* where and how each limitation is found within each accused product.

Plaintiff further argued during oral argument that defendant failed to take into account his expert's analysis, which plaintiff relies upon in his analysis pursuant to Patent Local Rule 3-1(b). Plaintiff believed that this analysis, which makes certain references to defendant's documents and various features of the accused products, cured the alleged claim chart deficiencies under Patent Local Rule 3-1(c). The analysis for Patent Local Rule 3-1(b), however, largely contains the same high-level descriptions, information, and opinions as those in the claim charts. Nor does plaintiff's analysis for Patent Local Rule 3-1(b) tie specific features of specific accused products to each limitation of each asserted claim, as required for Patent Local Rule 3-1(c).

At bottom, though plaintiff is not required to disclose specific evidence or prove his infringement case, his merely pointing out general features of defendant's TCAM design is insufficient under Patent Local Rule 3-1(c), which requires plaintiff to "specify the location of every claim element within the accused products." *Bender v. Maxim Integrated Prods.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (Judge Susan Illston). Plaintiff fails to include factual support with "the degree of specificity" needed "to provide reasonable notice" to defendant as to why plaintiff "believes [he] has a 'reasonable chance of proving infringement.' " *Shared Memory*, 812 F. Supp. 2d at 1025 (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).

### B.    Generic Indirect Infringement Theory.

The amended infringement contentions also fail as to plaintiff's allegation of indirect infringement.  Under Patent Local Rule 3-1(d), plaintiff must disclose for each claim "any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."  Plaintiff's contentions, however, merely stated as follows (Dkt. No. 42-8 at 27):

> The claim 1, 5, 8,12,15 and 17 of US Patent No.6744653 and Claim 1 and 9 of US Patent No.6999331 are directly infringed by the Chips of Nephos Inc. including Aries MT3250 Family, Aries Hybrid ToR Switch, Taurus Family NP8360 Series, Taurus ToR and Fabrics Switch.  Since the claims are infringed by TCAM used in the chips, and the TCAM function are always used by the Switches which using the chips ,so the chips of Nephos Inc. induced the parties which using the Chips of Nephos Inc. to infringe the US patent No. 6744653 and 6999331, which contribute to or are inducing that indirect infringement.

A "general assertion of the elements of indirect infringement is plainly insufficient." *Blue Spike, LLC v. Adobe Sys., Inc.*, No. C 14-01647 YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015) (Magistrate Judge Jacqueline Corley) (citing *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. C 12-04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013) (Magistrate Judge Nathanael Cousins)).  "[B]oilerplate language that simply claims an accused infringer provided instructions on, advertised, or promoted the use of an accused product, without describing which instructions, advertisements, or promotions led to what infringing behavior, does not suffice under PLR 3-1(d)." *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *4–5 (N.D. Cal. June 19, 2017) (citing *France Telecom*, 2013 WL 1878912, at *5).

Here, the amended infringement contentions fail to identify what materials (or any specific act by defendant for that matter), such as specific advertisements or instructions by defendant, allegedly led to what infringing behavior.  Nor do they specify any third party or describe any acts committed by a third party, other than boilerplate language, that would suggest direct infringement.  Plaintiff's disclosure thus amounts to mere formulaic assertions of indirect infringement for all asserted claims and therefore fails to comply with Patent Local Rule 3-1(d).

## C.     Boilerplate Assertions re Doctrine of Equivalents.

Plaintiff's disclosures of infringement under the doctrine of equivalents also fail to comply with Patent Local Rule 3-1(e), which requires plaintiff to disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents."  The amended infringement contentions provide the following (Dkt. No. 42-8 at 27):

> Each limitation of the asserted claim 1, 5, 8,12,15 and 17 of US Patent No.6744653 and Claim 1 and 9 of US Patent No.6999331 are at least alleged to be present under the doctrine of equivalents in the Accused Instrumentality Aries MT3250 Family, Aries Hybrid ToR Switch, Taurus Family NP8360 Series, Taurus ToR and Fabrics Switch.  The claim 1 of US patent No. 6999331 alleged to be literally present in the Accused Instrumentality Aries MT3250 Family, Aries Hybrid ToR Switch, Taurus Family NP8360 Series, Taurus ToR and Fabrics Switch.

Plaintiff further generally states at the outset of his contentions with respect to certain claims that, for example, "[i]n my opinion, based upon a reasonable degree of scientific certainty, Claim 8 of the '653 Patent at least reads on the 'TCAM of Nephos' under the doctrine of equivalents" (*id.* at 5).  Plaintiff also intersperses throughout his claim charts that, with respect to certain claim limitations, "[a]ny modifications to this [limitation] should be deemed as Doctrine equivalent [*sic*]" (*see, e.g.*, *id.* at 13, 15, 23).

"It is improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion." *Finjan, Inc. v. Proofpoint, Inc.*, No. C 13-05808 HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) (Judge Haywood Gilliam, Jr.).  Here, plaintiff's boilerplate assertions regarding doctrine of equivalents amount to improper generic "placeholder" language and are thus insufficient under Patent Local Rule 3-1(e).

*                    *                    *

Defendant contends that the amended infringement contentions should be struck and that the case be dismissed with prejudice.  Though plaintiff is proceeding *pro se*, defendant points out that plaintiff "is not new to patent litigation," that "this is not the first time Plaintiff has struggled to comply with Patent Local Rule 3-1," and that plaintiff "has had ample notice and experience to know that all three versions of his infringement contentions have been and are

8

insufficient under Patent Local Rule 3-1" (Dkt. No. 42 at 18).  *See, e.g.*, *Huang v. OpenSilicon, Inc.*, No. 18-cv-00707-JSW (LB), 2018 WL 5099275, at \*5–6 (N.D. Cal. Aug. 27, 2018) (Magistrate Judge Laurel Beeler) (discussing the inadequacy of plaintiff's proposed amendments to his infringement contentions under Patent Local Rule 3-1).  As such, defendant asserts that plaintiff should not be given leave to amend his infringement contentions at this stage and as such, the instant action should be dismissed pursuant to Rules 12(b)(6), 12(c), 12(d), 12(h)(2)(B), or 56 for failure to state a claim upon which relief may be granted (Dkt. No. 42 at 19; *see also* Dkt. No. 8 at 6).

Though plaintiff has had a number of chances to amend his contentions already and has been repeatedly warned of the requirements under Patent Local Rule 3-1, this order will strike *pro se* plaintiff's infringement contentions and allow one last chance.  Plaintiff has *one* last chance to serve and file proper infringement contentions by **JULY 31 AT NOON**.  Beyond that, no more amendments will be entertained and dismissal possibly with prejudice will be likely if the infringement contentions do not comply with Patent Local Rule 3-1 by that date.  To reiterate, plaintiff must both serve on defendant *and* file on the public docket proper infringement contentions by the aforementioned deadline.  If plaintiff fails to file on the docket proper infringement contentions by that deadline, the Court may dismiss the action possibly with prejudice, and retain jurisdiction only for purposes of attorney's fees and costs.  (And, if plaintiff fails to file anything by that deadline, the Court may *sua sponte* dismiss the action.)

### 2.   PLAINTIFF'S MOTION FOR SANCTIONS.

Plaintiff separately moves for Rule 11 sanctions against defendant and requests an award of costs and expenses resulting from defendant's "false statement and vexatious bad faith conducts" (Dkt. No. 44 at 1).  He lists a litany of allegedly false statements made by defendant's counsel, Attorney Brandon Stroy, regarding defendant's true owner and further takes issue with defendant's motion to strike.  None of plaintiff's complaints warrants Rule 11 sanctions.

*First*, plaintiff fixates on defendant's corporate disclosure statement dated November 21, 2018 (*id.* at 3).  That disclosure stated that "Nephos is wholly-owned, indirectly, by MediaTek, Inc. (located in Hsinchu City, Taiwan) through MediaTek Investment Singapore Pte. Ltd. and

Gaintech Co. Limited. Nephos is 100 percent owned by Gaintech Co. Limited" (Dkt. No. 9 at 1). Plaintiff, however, asserts that he found on defendant's website that Nephos Inc. includes Nephos (Hefei) Co., Ltd; Nephos (USA) Inc.; Nephos (Taiwan) Inc.; and Nephos (Singapore) Pte. Ltd. (Dkt. No. 44 at 3–4). He then claims that he "also found that Nephos (Hefei) Co. Ltd are [*sic*] invested by China Hefei governmental high-tech investment Ltd." and other entities and that "the officers of Nephos (Hefei) Co., Ltd includes [*sic*] the Executives of Nephos Inc [*sic*] and Hefei government Officials" (*id*. at 4–5). Plaintiff argues that Attorney Stroy provided to him defendant's 2015 initial registration in the United States and a certificate of 10,000 shares of common stock issued to Gaintech Co. Limited in an attempt "to cheat" and further defraud plaintiff into believing that defendant is wholly-owned by Gaintech (*id*. at 5). He further contends that defendant, perhaps along with Huawei Technologies Co. Ltd., "hid[] the evidence that it has been invested by Hefei governmental fund in China" because it "has sold its networking chips infringing '653 and '331patents [*sic*] to Amazon and used in Amazon data center which has hold the data of US government and Pentagon" (Dkt. No. 53 at 23–24).

On the current record, this order does not find that Attorney Stroy attempted "to cheat" plaintiff or the Court with defendant's corporate disclosure statement. Attorney Stroy based his filing upon information obtained from in-house counsel for MediaTek Inc., defendant's ultimate corporate parent (Dkt. No. 48-1 ¶ 3). And, following plaintiff's objection to the corporate disclosure statement, Attorney Stroy received from defendant and sent to plaintiff certain documents such as defendant's "Certificate of Incorporation," "Investor Representation Statement," and "Stock Issue Certificate" in order to verify to plaintiff his prior representations of defendant's ownership (*see* Dkt. Nos. 48-6–48-8). Though plaintiff still disagrees with Attorney Stroy's representations and has provided other documents — originally written in Chinese and translated to English by plaintiff himself — that allegedly show that defendant has other owners aside from Gaintech (*see, e.g.*, Dkt. No. 44-5), there is no evidence that Attorney

Stroy acted in bad faith or otherwise violated his obligations under Rule 11 in his representations of defendant's ownership status.[2]

Moreover, even assuming that Attorney Stroy misstated defendant's ownership, it is unclear what exact injury plaintiff claims to have suffered based on a relatively inconsequential filing in the instant patent infringement action. In fact, plaintiff himself admitted in correspondence with Attorney Stroy dated December 13, 2018, that he "assume[d] that" the alleged corporate disclosure misstatement "d[id] not bother this case," as it is "Nephos Inc." who "has used [his] patents, so [he] only care[d] that Nephos Inc. should license [his] patents" and that he "d[id] not care who owns Nephos Inc." (Dkt. No. 48-10 at 1).

*Second*, plaintiff next complains that in defendant's case management statement, defendant misleadingly used the name "Nephos (USA) Inc." (Dkt. No. 44 at 6). But defendant explains that defendant's "brief use of" this name "was a direct result of" plaintiff's "own use of the Nephos (USA), Inc. name interchangeably with Nephos, Inc. [*sic*] when referring to Nephos in" plaintiff's complaint (Dkt. No. 48 at 2). That is, defendant initially had consistently used the name "Nephos Inc." in its filings at the start of the instant action. While preparing its case management statement, however, defendant "noticed that" plaintiff "had identified 'Nephos (USA), Inc.' in Paragraph 3 of his complaint under the heading 'The Parties' " (Dkt. No. 48 at 5 (citing Dkt. No. 1 at ¶ 3). Defendant accordingly identified itself as "Nephos (USA), Inc." thereafter (*see* Dkt. Nos. 23, 27, 28). After plaintiff filed his objection to defendant's case management statement, defendant's counsel consulted with defendant and confirmed that "Nephos (USA) Inc." does not exist and has since identified itself again as "Nephos Inc." (Dkt. No. 48-1 ¶ 4).

This order thus finds that plaintiff's accusation that defendant "played a very stupid cheating scheme to change Nephos Inc. to Nephos (USA) Inc." is without merit (*see* Dkt. No. 44 at 6). At most, whatever error there was flowed from plaintiff's own error. Nor does plaintiff claim any real injury due to defendant's alleged scheme.

---

[2] This order notes that the reliability of plaintiff's documents is uncertain at this stage. Moreover, those documents refer to "Nephos (Hefei) Co. Ltd." — a separate non-party to the instant action.

*Third*, plaintiff further contends that defendant filed its "frivolous" motion to strike in an attempt to "harass[] and [] increase the cost" to plaintiff and "delay the case" (*id*. at 7). In light of the ruling above on the motion to strike, plaintiff's complaint again falls flat.

\*          \*          \*

To repeat, the Court does not find (on the current record) any evidence supporting plaintiff's contention that Attorney Stroy has acted in bad faith in the instant action. As defendant points out, plaintiff's instant motion is without merit and plaintiff's insistence on pursuing the motion "is illustrative not of the merits of his arguments, but of his tendency toward frivolous and vexatious litigation tactics" (Dkt. No. 48 at 3). Plaintiff has been repeatedly advised by defendant's counsel that his threatened motion for Rule 11 sanctions was frivolous and without merit and that his infringement contentions were inadequate under Patent Local Rule 3-1. Defendant asserts that this "trend" of plaintiff's litigation conduct "is clear and, unfortunately, predictable" (Dkt. No. 48 at 8). It highlights plaintiff's prior conduct in *Huang v. Huawei Technologies Co.*, No. C 15-1413 JRG (RSP) (E.D. Tex.) ("*Huawei I*"), and *Huang v. Huawei Technologies Co.*, No. C 16-0947 JRG (RSP) (E.D. Tex.) ("*Huawei II*"). For example, in *Huawei I*,

> Huawei submitted declarations stating that Mr. Huang repeatedly contacted Huawei's in-house counsel about settlement, despite Huawei's outside counsel's repeated instructions to Mr. Huang not to do so. The declarations asserted that Mr. Huang had stated that he sued Huawei because he believed the case would quickly settle for $1.5 million, that he did not want to share revenue with a lawyer, and that he would continue filing motions to force Huawei to incur legal fees. Huawei's fees motion also pointed to Mr. Huang's allegations that Huawei, its attorneys, and its third-party declarants had purportedly made perjured statements in Huawei's summary judgment declarations. Mr. Huang responded by making additional unsupported perjury allegations.

*Xiaohua Huang v. Huawei Techs. Co.*, 735 F. App'x 715, 719–20 (Fed. Cir. 2018), *cert. denied sub nom. Huang v. Huawei Techs. Co.*, No. 18-1275, 2019 WL 2166419 (U.S. May 20, 2019). Huawei was eventually awarded attorney's fees after the magistrate judge found that plaintiff's conduct "reveal[ed] bad faith and an abuse of the judicial process" and "ha[d] unnecessarily burdened Huawei and the Court with what appear[ed] to have been a frivolous case from the outset" (Dkt. No. 48-11 at 6–7). Plaintiff's *five* separate appeals in *Huawei I* were ultimately

denied and the United States Court of Appeals for the Federal Circuit affirmed the district court's dismissal of the action and attorney's fees award against plaintiff (Dkt. No. 48-12).[3] And, plaintiff's vexatious litigation conduct appears to be on repeat in the seemingly duplicative *Huawei II* action (*see, e.g.*, Dkt. No. 48-14).

This order agrees that plaintiff's litigation history is troubling, both in this case and in other cases. To repeat, if *proper* infringement contentions are not timely filed, the Court will likely dismiss the instant action possibly with prejudice and may well consider a motion for attorney's fees and costs by defendants.

## CONCLUSION

To the foregoing extent, defendant's motion to strike is **GRANTED**. Plaintiff has one last chance to amend and file his infringement contentions by **JULY 31 AT NOON**. Plaintiff's motion for sanctions against defendant is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 9, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

---

[3] Plaintiff's petition for a writ of certiorari to the Supreme Court of the United States, in which plaintiff again accused Huawei and Magistrate Judge Roy Payne of fraud (*see* Dkt. No. 48-13), was denied on May 20, 2019.